IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LADONIA R. R.,[1]                                              Case No. 1:22-cv-01179-JR

        Plaintiff,                                       OPINION AND ORDER

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

            Defendant.

RUSSO, Magistrate Judge:

      Plaintiff Ladonia R. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Supplemental Security Income and Disability Insurance Benefits under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

_____

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## BACKGROUND

Born in April 1967, plaintiff alleges disability as of January 1, 2018,[2] due to degenerative disc disease, insomnia, tremors, chronic fatigue, depression, anxiety, and functional disorder. Tr. 233, 267. Her applications were denied initially and upon reconsideration. On April 28, 2021, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 34-65. On May 7, 2021, the ALJ issued a decision finding plaintiff not disabled. Tr. 13-29. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 16. At step two, the ALJ determined the following impairments were medically determinable and severe: "obesity, in combination with dextroscoliosis; a mental impairment variously assessed as post-traumatic stress disorder, depression, anxiety, somatic disorder." *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 17.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform medium exertion work as defined by 20 C.F.R. § 404.1567(c) and § 416.967(c) except she is limited to: "simple, repetitive tasks" and

---

[2] Plaintiff initially alleged disability as of March 15, 2017, but amended her onset date at the hearing to better correspond with her work history. Tr. 44.

"interaction with co-workers, the general public, and supervisors on a not more than occasional basis." Tr. 19.

At step four, the ALJ determined plaintiff could perform her past relevant work as a dishwasher. Tr. 27. Alternatively, at step five, the ALJ concluded there were a significant number of jobs in the national economy that plaintiff could perform despite her impairments, such as laundry worker, hospital cleaner, and hand packager. Tr. 28.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) discrediting her subjective symptom statements; (2) improperly assessing the medical opinion of David Archambault, Ph.D.; and (3) formulating an incomplete RFC or, alternatively, failing to find her disabled at step five based on the VE's testimony.

## I.    Plaintiff's Testimony

Plaintiff contends the ALJ erred by discrediting her testimony concerning the extent of her mental impairments.[3] When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to

---

[3] Specifically, plaintiff challenges the ALJ's rejection of her "mental health symptoms" and the "fatigue complaints" attributable to her somatoform disorder. Pl.'s Opening Br. 14-15 (doc. 12).

permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the hearing, plaintiff testified that she was unable to work due to her mental impairments and "chronic fatigue syndrome." Tr. 49-51. She indicated that when she gets "too stressed out" or strains herself "too much," she gets a "brain fog" and can only "focus . . . on one thing." Tr. 51. In terms of treatment, plaintiff testified that she continues to obtain counseling every two weeks for her depression, anxiety, and post-traumatic stress disorder. Tr. 49-50.

Concerning daily activities, plaintiff explained she is "unable to do" household chores, such that her daughter comes over to assist with those. Tr. 53-54. She endorsed the ability to pay bills, use her phone, make her own meals if they are simple, and to shop online for groceries (her daughter picks them up). Tr. 54-55. Plaintiff explained that she no longer drives or attends social events. Tr. 55, 57.

After summarizing her hearing testimony, the ALJ determined plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 24. In particular, the ALJ cited "clinical findings confirm[ing] normal behavior, mood, and affect on examination"; chart notes from doctors who did not treat plaintiff's mental impairments reflecting she was "doing well" and/or that her psychological conditions were "stable" or improving; the lack of "contemporaneous office visit notes [documenting] any mental status abnormalities" by her chiropractor; and inconsistencies in her presentation during an emergency room visit for anxiety in October 2017.[4] Tr. 20-24.

The ALJ erred in evaluating plaintiff's subjective symptom testimony. Concerning the latter rationale, the underlying evidence predated the alleged onset date of disability and therefore is "of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Furthermore, the fact that a patient may be reticent to talk to one provider, but more

---

[4] The Commissioner also asserts that plaintiff's daily activities undermine her allegations of disabling mental impairments. Def.'s Resp. Br. 6 (doc. 15). Yet the only mention of these activities occurred in the context of plaintiff's physical symptom testimony. *See* Tr. 21-23 (ALJ denoting evidence showing that plaintiff walked for exercise and engaged in household chores); *see also Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (as amended) (court "may review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely"). To the extent the Commissioner suggests plaintiff's testimony is less reliable due to pre-alleged onset date evidence showing "suspected malingering," the ALJ did not make any finding to that effect. Def.'s Resp. Br. 3 (doc. 15); *see also Austin v. Saul*, 818 Fed.Appx. 725, 727-28 (9th Cir. 2020) (examining doctor's "brief reference to 'signs of malingering' without any accompanying explanation [did not] constitute affirmative evidence of malingering. Nor do we equate a claimant's possible exaggerations regarding the severity of his symptoms with affirmative evidence of malingering"). And, as plaintiff correctly observes, she was "assessed with somatization disorder, which would provide a medical basis for symptom complaints in excess of physical findings." Pl.'s Reply Br. 10 (doc. 19).

comfortable speaking with a friend or a different provider is not inherently suggestive of an inconsistency in the record.

The ALJ's preceding rationale is likewise improper. The ALJ chronicles plaintiff's contemporaneous subjective reports of mental health symptoms to her chiropractor, including a "continued increase in brain fog and lack of concentration." Tr. 22. Plaintiff's consistency in reporting her symptoms would ordinarily bode in her favor. Yet the ALJ found, in part, that plaintiff's hearing testimony lacked support in the record because her chiropractor, who was treating her physical (as opposed to mental) conditions, failed to make psychiatric "clinical finding[s] on examination." *Id.* This reasoning defies logic and is anathema to longstanding legal principles reflecting that the purpose of a medical source's treatment and/or their specialty are factors to be considered in evaluating their opinions. *Cf. Kenneth C. v. Saul*, 2021 WL 4927413, *7 (N.D. Cal. Mar. 15, 2021) ("[w]here a specialist's opinion is outside her area of specialty, it is entitled to less weight"). In other words, it would be inappropriate for plaintiff's chiropractor, given her area of specialty and the purpose of their treating relationship, to perform mental status exams on plaintiff.

The remaining reasons cited by the ALJ are not supported by substantial evidence, at least for the entire duration of the adjudication period. As a preliminary matter, the fact that plaintiff demonstrated "normal behavior, mood, and affect on examination" does not contravene her subjective symptom testimony, especially in light of the myriad medical records documenting her affect as "flat" or mood as "depressed." *See, e.g.*, Tr. 842-43, 948, 1273; *see also Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("observations of cognitive functioning during therapy sessions" – e.g., "good eye contact, organized and logical thought content, and focused attention" – "do not contradict [the claimant's] reported symptoms of depression and social anxiety").

The record reflects that plaintiff continued to work part-time (i.e., approximately 3 hours per day) through August 2018. Tr. 268, 397, 437. Although she endorsed physical limitations associated with her employment, including fatigue, she did not at that time indicate an inability to work due to mental restrictions, despite some emerging reports of brain fog, memory problems, and anxiety. *See, e.g.*, Tr. 409, 437, 446-47, 455-56, 840; *see also* Tr. 65 (plaintiff testifying at the hearing that she cannot do "anything strenuous," including work, due to her "chronic fatigue" and "weak" muscles).

From October 2018 through the date of the ALJ's decision, plaintiff consistently and regularly sought mental health treatment. Her counselors initially noted improvement with treatment; although she continued to make efforts at self-improvement throughout 2019, plaintiff still experienced waxing and waning of her psychological symptoms (including low motivation, intrusive thoughts, and social isolation). Tr. 882-915, 944-50; *see also* Tr. 1153, 1164-65 (plaintiff's primary care provider observing a "worsening of the depression and anxiety" in February 2019, followed by a reprieve in symptoms). Specifically, plaintiff began walking for exercise and spending time, both inside and outside of her home, with a friend or family members. *Id.* She also occasionally attended social events, like her granddaughter's birthday party, and cared for her brother while he was unwell. Tr. 886, 892. As such, as of May 2019, plaintiff's mental health provider noted that she no longer met the diagnostic criteria for anxiety. Tr. 911.

However, towards the end of 2019, plaintiff's mental impairments began to worsen, with increased inertia and isolation. *See, e.g.*, Tr. 1330-99; *see also* Tr. 1108 (June 2020 chiropractic records documenting plaintiff's reports of poor sleep "due to her anxiety and [she] has started to pull out her hair again, which has been a problem for her in the past. (There is a noticeable bald spot on her head and scratches around her hair line)"), 1085 (September 2020 chiropractic records

reflecting plaintiff was "more depressed" and "that her anxiety is less controlled," with increased inactivity and manifestations of stress, including "continu[ing] [to] pull out her hair and pick at her skin"), 1081 (October 2020 chiropractic records showing "worsening anxiety symptoms" and increased inactivity). Plaintiff did "not want . . . to admit that she has depression, in the past labelling it as brain fog, or ignoring it altogether" but was forced to recognize her condition due to ongoing "negative thoughts." Tr. 921; *see also* Tr. 911 (plaintiff's counselor expressing that her "'brain fog' may be an unrecognized response to internal stimuli that reminds her of past trauma"). Plaintiff's motivation and energy level became so low that her daughter started coming over to assist with household chores. Tr. 1382.

Throughout December 2020, plaintiff's counselor described her progress as limited, observing that her thought process was "tangential" and she often needed redirection. Tr. 1400-05. In January 2021, plaintiff reported increased crying and continued to have tangential thought processes. Tr. 1406-08.

During her annual mental health review later that month, plaintiff evinced "'not much' progress with depression symptoms" and an increase in anxiety, such that she "continue[d] to engage in patterns of social isolation" and her sleep was disrupted. Tr. 1277-78. At that time, plaintiff's provider indicated that she "appears to meet diagnostic criteria for Major Depressive Disorder with anxious distress," with "[f]unctional impairments includ[ing] difficulty completing [activities of daily living] and continued patterns of social isolation." Tr. 1282-83.

There is a dearth of mental health records after January 2021, however, the chart notes that do exist document ongoing depression. Tr. 1273, 1322, 1409-13. Given the medical record as a whole, the fact that plaintiff's primary care provider or obstetrician (neither of whom were providing treatment or medication management for her mental health conditions) made rote

denotations indicating plaintiff's anxiety and depression were "stable" or that she was "feeling well" are insufficient to render her hearing testimony less reliable. *See, e.g.*, Tr. 1164-65, 1182-83, 1211; *see also Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's "paraphrasing of record material" that was "not entirely accurate regarding the content and tone of the record" did not support an adverse credibility finding); *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("[t]hat a person who suffers from [mental impairments] makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace," such that the Commissioner erroneously relies on indications in the medical record that the claimant "was 'doing well' [when] doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work") (citations and internal quotations omitted).

In sum, the ALJ relied on improper reasoning, or inconsistencies in the record that were immaterial or coincided with plaintiff's brief period of un-sustained improvement to discredit her hearing testimony. As such, a significant question exists concerning plaintiff's work-related abilities, especially during the latter part of the adjudication period. Indeed, the record is silent concerning plaintiff's daily activities during this period and there is no medical evidence from an acceptable medical source concerning her mental functioning in 2020 or beyond. Therefore, the record is insufficient to support the ALJ's decision as to this issue.

## II.    Medical Opinion Evidence

Plaintiff next asserts the ALJ improperly discredited Dr. Archambault's opinion. Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).  "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and

'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are."[5] *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

In March 2019, Dr. Archambault completed an evaluation of plaintiff's mental impairments. Tr. 839-45. Dr. Archambault's opinion was based on the review of limited records from 2018, clinical observations, a diagnostic interview, and mental status exam. Tr. 839-44. Based on these metrics, Dr. Archambault diagnosed plaintiff with "Major depressive disorder, recurrent severe" and "Post traumatic stress disorder." Tr. 844. In the narrative portion of his report, Dr. Archambault stated:

> It is important to note that the present evaluation is limited in scope and based upon a single time limited session. With these stated limitations in mind, the following diagnostic clinical impressions and impairment considerations are offered:
>
> The claimant is capable of managing her own funds.
>
> The claimant would not have difficulty performing simple and repetitive tasks.
>
> The claimant would have difficulty performing detailed and complex tasks. It should be noted she does not drive and also had significant difficulty sustaining her concentration during calculations.
>
> The claimant would have difficulty accepting instructions from supervisors. She is easily overwhelmed with information when it is more than minimally complex and it is likely that instructions would need to be simple and repeated.

---

[5] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The new regulations nonetheless "displace our longstanding case law requiring an ALJ to provide" different levels of reasoning (i.e., "clear and convincing" or "specific and legitimate") based on a hierarchy of medical sources. *Id.* at 787.

The claimant would have difficulty interacting with coworkers and the public. She is chronically irritable, hypervigilant in public, tends to self isolate to reduce her anxiety, is fearful of people, and suffers with panic attacks.

The claimant would have difficulty performing work activities on a consistent basis without special or additional instructions due to her poor concentration, focus, memory, and being easily distracted. It is likely that she would require monitoring and prompting in order to stay on task.

The claimant would have difficulty maintaining regular attendance and completing a normal workday, work week without interruptions from a psychiatric condition. It is believed that the symptoms related to her post traumatic stress disorder and depression would likely interfere with her completion of a normal work week schedule at some point.

The claimant would have difficulty dealing with the usual stress encountered in the workplace. It is believed that the symptoms related to her post traumatic stress disorder and depression leave her with minimal internal resources for the appropriate management of stress and/or resolution of conflict in a work or social setting.

Tr. 844-45.

The ALJ determined "Dr. Archambault's opinions are not entirely persuasive" because they "appear . . . to rely primarily on [plaintiff's] subjective complaints and self-reported limitations, as well as [plaintiff's] presentation on consultative examination that is inconsistent with other records in evidence." Tr. 25. The ALJ explained further:

For example, though [plaintiff] spoke with a slow rate of speech with flow described as "cautious and characterized by long pauses . . . the volume was soft spoken . . ." mental health records of [plaintiff's] treating provider routine describe [her] speech as clear with normal rate and volume, but for "slightly" dysarthric speech noted following removal of her teeth. Though [plaintiff] presented to Dr. Archambault with "impoverished" speech and provided "little detail," other records describe the claimant as "talkative" and even providing "excessive" detail at her mental health appointments. To the extent Dr. Archambault's opinion reflects a degree of limitation greater than that assessed above, it is found to be inconsistent with the record as a whole which confirms the efficacy of [[plaintiff's] medications resulting in stable mood with clinical findings of normal mood, affect, behavior, memory, and cognition throughout the relevant period of review.

*Id.* (internal citations omitted).

An ALJ may discount a medical opinion if it is "based to a large extent on [the claimant's un-credible] self-reports and not on clinical evidence." *Ghanim*, 763 F.3d at 1162 (citation and internal quotations omitted). But an ALJ errs in this context "when an opinion is not more heavily based on a patient's self-reports than on clinical observations" or the ALJ improperly rejected the claimant's subjective symptom statements. *Id.*

Additionally, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). That is, "mental health professionals frequently rely on the combination of their observations and the patient's reports of symptoms . . . To allow an ALJ to discredit a mental health professional's opinion solely because it is based to a significant degree on a patient's 'subjective allegations' is to allow an end-run around our rules for evaluating medical opinions for the entire category of psychological disorders." *Ferrando v. Comm'r of Soc. Sec. Admin.*, 449 Fed.Appx. 610, 612 n.2 (9th Cir. 2011). In any event, "a clinical interview and a mental status evaluation . . . are objective measures and cannot be discounted as a 'self-report.'" *Buck*, 869 F.3d at 1049.

Here, Dr. Archambault based his opinion on a number of objective measures which the ALJ simply ignored. Plaintiff's clinical interview reflected reports of depression, anxiety, and social isolation, and Dr. Archambault's clinical observations documented "significant difficulty concentrating during the evaluation" and the need for repetition. Tr. 841-42. His mental status exam revealed a "sad" facial expression, "flat affect," depressed/anxious mood, poor eye contact, slowed motor activity and rate of speech, easy confusion, a low fund of general knowledge, and problems with serial calculations. Tr. 842-44; *see also Ghanim*, 763 F.3d at 1162 (where the medical opinion evidence "discuss[ed] the providers' observations, diagnoses, and prescriptions,

in addition to [the claimant's] self-reports," the ALJ failed to adequately support "his conclusion that these opinions were based more heavily on [the claimant's] self-reports").

And, as discussed in Section I, plaintiff's unremarkable clinical findings do not undermine her symptom statements in this context (especially given the ALJ's mischaracterization of the record). Finally, the fact that plaintiff may have different presentations on different days is an inadequate basis to discredit Dr. Archambault's assessments. *Cf. Garrison*, 759 F.3d at 1017 ("[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working"); *see also* Tr. 453-54, 461, 470, 497 (other medical records documenting plaintiff's slowed speech or responses). The ALJ erred in assessing Dr. Archambault's opinion.

## III.    RFC and Remedy

Plaintiff argues that the ALJ's RFC is deficient because it fails to account for the medical opinion evidence and her subjective symptom statements. Alternatively, plaintiff contends she should be found disabled based on her existing RFC and the VE's testimony.

As addressed herein, plaintiff is correct that the ALJ committed harmful legal error. *See Nguyen v. Chater,* 100 F.3d 1462, 1466 n.3 (9th Cir .1996) (VE's response to an incomplete hypothetical has "no evidentiary value") (citations and internal quotations omitted). Moreover, the Court agrees that the VE's testimony is equivocal. The ALJ's dispositive hypothetical asked the VE whether, in relevant part, an individual limited to "not more than occasional" interactions with coworkers, the general public, and supervisors – i.e., less than or equal to one third of an eight hour workday (or approximately 2 hours and 40 minutes) – could sustain competitive employment. Tr. 60. The VE stated that such an individual could perform their past relevant work as a

dishwasher, or the representative occupations of laundry worker, hospital cleaner, and hand

packager. Tr. 60-61. Yet the VE responded in the affirmative when plaintiff's attorney inquired

whether, "for five and a half hours of an eight-hour day, if the person couldn't interact and respond

to the supervisor, would they eventually get terminated?" Tr. 64.

Stated differently, the VE indicated that an individual who could interact appropriately

with a supervisor for 2 hours and 40 minutes per day would be competitively employable, whereas

an individual who could interact appropriately with a supervisor for 2 hours and 30 minutes per

day would not be. The Commissioner attempts to minimize this discrepancy, arguing plaintiff's

hypothetical "was more limiting the ALJ's hypothetical or RFC finding" – however, this ten

minute difference is sufficiently small to raise questions concerning the validity of the VE's

testimony, especially absent any explanation. Def.'s Resp. Br. 14 (doc. 15).

The question thus becomes the proper legal remedy. The decision whether to remand for

further proceedings or for the immediate payment of benefits lies within the discretion of the court.

*Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). Nevertheless, a

remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally

sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no

outstanding issues that must be resolved, and further administrative proceedings would not be

useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the

slightest uncertainty" concerning disability. *Id.* at 1100-01 (citations omitted); *see also Dominguez*

*v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the

proper remedy).

In this case, the Court finds there are ambiguities in the record that support the need for

further proceedings. On one hand, it is undisputed that plaintiff's mental health impairments are

longstanding and have persisted despite years of counseling. The ALJ also erred in regard to Dr. Archambault's opinion, which is suggestive of limitations beyond those articulated in the RFC. On the other hand, plaintiff worked after the alleged onset date despite her impairments and did not cite her inability to be around coworkers or supervisors as a barrier to employment. Tr. 65; *see also* Tr. 294 (plaintiff's September 2018 "Adult Function Report" reflecting that she gets along with authority figures "very well" and has never been fired or laid off from a job due to problems getting along with others). Plaintiff's impairments seemed to worsen at some point after the alleged onset date, such that it is unclear if/when she became disabled, especially in light if the VE's inconsistent testimony.

Accordingly, further proceedings are required to resolve this case. *See Treichler*, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings). Given the ambiguity surrounding any potential disability onset date, coupled with the complex and longstanding nature of plaintiff's mental health conditions, referral to a consultative examination or the use of a medical expert specializing in psychology would be helpful. Additional efforts should also be made to obtain plaintiff's most recent mental health records. Therefore, upon remand, the ALJ must seek out additional records and a consultative exam or medical expert and, if necessary, reweigh the medical and other evidence of record, reformulate plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 26th day of July, 2023.


_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge